STOPA v. UNITED STATES.
No. 8580.

Circuit Court of Appeals, Eighth Circuit.
Feb. 12, 1930.

James M. Meek, of Kansas City, Kan., for appellant.

S. M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge.

August 4, 1927, the grand jury of the United States for the Western District of Missouri, at Kansas City, returned an indictment against the three named defendants, Josephine Blaschun, Louis Stopa, and George H. Lulich. This indictment was in seven counts. The first count charged the defendants with devising a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises from six different insurance companies, therein named, by insuring the life of one Peter Glumicich, variously named as Pete Glumicich, Peater Glumicih, Pete Glumicih, Pete Glumich, Pete Clumicic, and Petter Clumicie. As a part of said scheme and artifice, the indictment alleged that the defendants would represent to said insurance companies, so to be defrauded, that said Peter Glumicich, under some one of the names above stated, was related to the defendants in such degree that they would be entitled to be beneficiaries in such policies of insurance; · that the said Glumicich was a stout, robust, and healthy person, about thirty-three years of age, and that his health and physical condition was such that he would be a good insurance risk; that the said Glumicich was an applicant for and desirous of having insurance written upon his life for large sums of money. It was further alleged that the defendants would procure persons other than Peter Glumicich to make applications for insurance in said companies intended to be defrauded, and to sign some one of the names above set forth to each of said applications, and would have the insurance thereon issued by said companies in such names and aliases. It was further a part of said scheme that defendants would substitute to the insurance companies for medical examination and inspection persons other than said Glumicich, and persons of such physical and healthy condition as would meet all medical and physical requirements of the insurance companies, well knowing at the time that said Glumicich was not an applicant for life insurance, and was, as alleged, a sick, weak, and debilitated man suffering from various diseases, including tuberculosis, and that his condition was such that he could not obtain insurance on his life, and could live at best for only a short period. The defendants, upon procuring policies of insurance in the various companies to be defrauded, would severally appear as beneficiaries therein, and would, upon the death of Glumicich, collect the insurance money covered by said policies.

It is inferable from the record that these applications for insurance were made during the spring of 1925. The only policy before us is that of the National Reserve Life Insurance Company of Topeka, Kan., issued April 7, 1925. Glumicich died November 15, 1925 of pulmonary tuberculosis. Trial in the District Court resulted in directed verdicts in favor of Blaschun and Lulich upon all counts, and in favor of Stopa upon all counts except the sixth, upon which a verdict of guilty was returned. There are contained in the transcript only the first and sixth counts. In the sixth count the allegations of the first are incorporated by reference, and the communication sent through and delivered by the Post Office Establishment of the United States, upon which the charge of this count is based, was in the form of an affidavit of Louis Stopa sent to the National Reserve Life Insurance Company of Topeka, Kan., for the purpose of collecting the money due under a policy upon the life of said Peter Glumicich. In that policy appellant was named as beneficiary.

The indictment charges a joint scheme to defraud by means of false representations through use of the mails. Under its allegations, the scheme was a comprehensive one, embracing a number of policies to be issued by the six insurance companies named. If the evidence taken disclosed the joint participation of all the defendants charged, then each would have been bound by the act of one of their number, in mailing a letter in furtherance of the scheme, as fully as though that letter had been mailed by himself. Of course, each count must be supported by the mailing charged in that count. The court in its charge explained its action in restricting the consideration of the jury to one defendant and a single count as follows:

"Originally the indictment was against three individuals and was in seven counts. I have explained to you during the progress of the trial why it is the duty of the court to direct as to two of the defendants verdicts of not guilty, and as to the other de-

fendant a verdict of not guilty except as to one count. That direction on the part of the court was not meant to convey to you any impression that it was the court's thought that there was not evidence tending to show a scheme to defraud. It was not the purpose of the court to indicate any view on that subject, but because the essence of this crime is the use of the mails, and because in all of the counts excepting one there was no proof that the defendants did use the mails, it was the court's duty to direct a verdict of not guilty as to two of the defendants, and as to all of the counts in connection with the remaining defendant except one."

Because the transcript does not contain the other counts of the indictment, and because the bill of exceptions, as will hereafter be shown, was so abridged as to disclose but a limited portion of the evidence in the case, we are unable to determine to what extent the other defendants participated in the fraudulent scheme. It is obvious, however, that, if they did participate, as this quotation from the charge would indicate, then the mailing of the letter under the sixth count would have bound them equally with Stopa. The directed verdict in their behalf, of course, finally disposes of the case as to them; we are concerned merely with the law applicable to the situation presented. The conviction being as to Stopa alone, and restricted to the sixth count, misunderstanding as to the nature of the charge apparently led to a similar misconception as to the scope of the bill of exceptions demanded. Appellant elected to have the record printed under the supervision of the clerk of the District Court, and the præcipe of counsel ordered "transcript of evidence pertaining to count six, indictment." Passing by the manifest impropriety of casting upon the clerk responsibility for sifting out evidence confined in application to count 6, it is clear that, if appellant was engaged in a fraudulent scheme to procure the issuance of policies upon the life of Glumicich by the six insurance companies named in the indictment, evidence of his participation therein could not be limited to his activities in connection with but one company, and a single count. In other words, evidence as to the fraudulent scheme is not confined to any particular count, although conviction, because of the element of mailing, may be so limited.

The bill of exceptions tendered by appellant is manifestly incomplete and insufficient to support the verdict and judgment. Nevertheless, for some reason, doubtless because of the misconception heretofore noted, the Assistant United States Attorney presented it to the court with this endorsement: "We have examined the foregoing bill of exceptions and find it correct, and it may be allowed and signed by the court at any time." Thereupon, the court naturally signed the bill, and the appended certificate to the effect that it contained "all the evidence introduced at the trial of said cause pertaining to count 6 of the indictment," and was a "full, true and complete bill of exceptions in and for said cause." The incompleteness of the bill is disclosed on the face of the proceedings by the absence of evidence of crucial allegations of the indictment, some of which are referred to by the court in its charge, and by the further fact that, in his brief, counsel for appellant volunteered what he terms a supplemental abstract of the record. Even if the bill of exceptions could be so supplemented, the additional features, as supplied, are too fragmentary and disjointed to supply its defects. It is the established rule of practice in federal courts that, in actions at law, a bill of exceptions, settled and signed by the trial judge, is indispensable to the review of rulings and proceedings made and occurring at the trial. Not even a stipulation of facts signed by counsel for the government and the defendant can take the place of a bill of exceptions so settled and signed, nor become a part of it. Chicago, Great Western Ry. Co. v. Le Valley (C. C. A. 8) 233 F. 384, 387; Perkins v. United States (C. C. A. 8) 35 F.(2d) 849; Flanagan v. Benson (this court), 37 F.(2d) 69, decided December 31, 1929.

Rule 23 of this court provides that, if at the hearing it shall appear that any material part of the record has not been printed, the court may make such order as may seem proper. Inquiry, however, develops that the printing in this case covers the entire bill of exceptions filed. We are precluded, therefore, from invoking the wholesome provision of this rule to bring up omitted parts. The vice in the record lies deeper than the printed abstract. Inasmuch as the record before us fails to support the conviction because of failure to preserve for review all the material evidence bearing upon the offense charged, the judgment must be reversed, and the case remanded for a new trial. It is so ordered.